# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| CHEETAH OMNI, LLC, a Texas limited liability company, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 6:23-cv-478 |
| vs. | ) ) |
| WHOOP, INC., a Delaware corporation, | ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiff Cheetah Omni, LLC ("Cheetah Omni") brings this Complaint against Whoop Inc. ("Whoop") for patent infringement:

## The Parties

1. Cheetah Omni is a Texas limited liability company with a principal place of business at 1718 Newport Creek Drive, Ann Arbor, Michigan 48103.

2. Whoop is a Delaware corporation with a principal place of business in Massachusetts which does business throughout the United States, including this District.

## Jurisdiction and Venue

3. This Court has subject matter jurisdiction over Cheetah Omni's claims under 28 U.S.C. §§ 1331 and 1338(a) because they arise under federal law, specifically, the United States Patent Act, 35 U.S.C. § 1 *et seq*.

4. This Court has personal jurisdiction over Whoop because a substantial portion of the acts that constitute the infringement in this Complaint took place in Texas.

5. Venue is proper because, as noted below, upon information and belief, Whoop has a regular place of business in the District and has committed acts of infringement in the District.

## Pertinent Facts

6. On June 16, 2015, the United States Patent and Trademark Office issued U.S. Patent No. 9,055,868 ("the '868 patent").

7. A true and correct copy of the '868 patent is attached as Exhibit A.

8. Cheetah Omni is the owner of all right, title and interest in and to the '868 patent, including the right to collect past damages.

9. Whoop offers and sells wearable technology systems (hereinafter, "wearables") designed to monitor and track various things, including (without limitation), blood oxygen levels, skin temperature, heart rate and other biometrics.

10. Whoop offers and sells its wearables from its website located at www.whoop.com as well as through various retailers and resellers, and advertises and sells its products in this District through its website and these various retailers and resellers.

11. Upon information and belief, Whoop has offices and/or facilities in this District from where it regularly conducts business.

12. Upon information and belief, Whoop owns, rents and/or leases space in this District for one or more of its employees to live and/or regularly conduct Whoop's business.

13. Upon information and belief, Whoop owns, rents and/or leases space in this District from which it regularly conducts research and development activities.

14. Below is a true and correct image formerly on Whoop's website showing that Whoop has a "lab" in Austin, Texas from which it "focuses on 'in-the-field research" for its products.



15.     In 2021, Whoop introduced a version of its wearables called the "Whoop 4.0."

16.     The Whoop 4.0 wearable device includes five (5) LED sensors and four (4) photodiodes that, when worn, are placed on or toward the direction of a user's skin. These sensors and photodiodes take diagnostic measurements of various things, including heart rate, oxygen levels and skin temperature.

17.     A true and correct image of the back of a Whoop 4.0 device showing its sensors and photodiodes is shown below.



18.     Information measured and monitored by a Whoop wearable device is periodically uploaded to a cloud database that it is maintained and/or controlled by or on behalf of Whoop.

3

19. The information measured and monitored by a Whoop wearable device that is uploaded to a cloud database may be accessed and/or retrieved by using a mobile application controlled and/or operated by or on behalf of Whoop (hereinafter, the "Whoop App").

20. The Whoop App is accessible from a variety of mobile devices, which mobile devices act as a control system for the Whoop App.

21. Whoop wearable users' mobile devices may include a touch-screen, a proximity sensor, and a wireless transceiver to transmit wireless data concerning a Whoop wearable user, including wireless data that includes physiological information about the user.

22. True and correct images of the Whoop App being displayed on a mobile device are shown below.

  

## Count I
## Infringement of U.S. Patent No. 9,055,868

23. Cheetah Omni incorporates the preceding allegations by reference.

24. Claim 7 of the '868 patent is exemplary of the other claims and provides as follows:

A diagnostic system comprising:

    a light source comprising:

        one or more semiconductor diodes generating an input light beam; and

        a lens system configured to receive at least a portion of the input light beam and to communicate at least the portion of the input light beam onto a part of a user's body comprising blood, wherein at least the portion of the input light beam is used in a measurement on a user;

    a software application capable of generating data based at least in part on the measurement on the user, wherein the data represents at least in part physiological information associated with the user;

    the software application capable of operating on a control system adapted to receive, store and process at least a portion of the physiological information, the control system having a touch-screen, circuitry for obtaining position information from a location sensor, and a wireless transceiver to transmit wireless data over a wireless link, the wireless data comprising at least a part of the physiological information, wherein the control system is further capable of receiving voice input signals and manually entered input signals; and

    a host comprising:

        a digital file for receiving and storing at least a portion of the wireless data;

        control logic at the host to process at least the portion of the wireless data to generate a status of the user;

        a memory storage device for recording the status; and

        an output for communicating at least a portion of the status or associated information over a communication link to one or more display output devices, wherein the one or more display output devices are located remotely from the host.

25. Whoop wearables, including at least the Whoop 4.0, constitute diagnostic systems.

26. Whoop wearables, including at least the Whoop 4.0, are comprised of at least one light source.

27. The light source of Whoop wearables, including at least the Whoop 4.0, are comprised of one or more semiconductor diodes generating an input light beam.

28. The light source of Whoop wearables, including at least the Whoop 4.0, are comprised of a lens system configured to receive at least a portion of the input light beam and to communicate at least the portion of the input light beam onto a part of a user's body comprising blood, wherein at least the portion of the input light beam is used in a measurement on a user.

29. Whoop wearables, including at least the Whoop 4.0, are comprised of a software application capable of generating data based at least in part on the measurement on the user of the Whoop wearable device, wherein the data represents (at least in part) physiological information associated with the user of the Whoop wearable device.

30. Whoop wearables, including at least the Whoop 4.0, are comprised of a software application capable of operating on a control system adapted to receive, store and process at least a portion of the physiological information, the control system having a touch-screen, a proximity sensor, and a wireless transceiver to transmit wireless data over a wireless link, the wireless data comprising at least a part of the physiological information, wherein the control system is further capable of receiving voice input signals and manually entered input signals.

31. Whoop wearables, including at least the Whoop 4.0, utilize a host comprised of a digital file for receiving and storing at least a portion of the wireless data, control logic at the host to process at least the portion of the wireless data to generate a status of the user, a memory storage device for recording the status; and an output for communicating at least a portion of the status or

associated information over a communication link to one or more display output devices, wherein the one or more display output devices are located remotely from the host.

32. Whoop infringes and has infringed one or more claims of the '868 patent by making, using, selling and/or offering for sale within the United States, and/or importing into the United States, products and systems covered by one or more claims of the '868 patent, including (without limitation) claim 7.

33. Upon information and belief, Whoop was aware of the '868 patent prior to the filing of this Complaint. At a minimum, the filing of this Complaint provides Whoop with knowledge of the '868 patent.

34. Whoop induces and/or has induced infringement of one or more claims of the '868 patent by inducing others such as its customers and retailers to make, use, sell and/or offer for sale within the United States, and/or import into the United States, products and systems covered by one or more claims of the '868 patent (including (without limitation) claim 7), with the intent and knowledge that such third parties commit such acts of direct infringement.

35. Whoop contributorily infringes one or more claims of the '868 patent by offering and selling products and/or components knowing they, alone or in combination with others, infringe one or more claims of the '868 patent, including (without limitation) claim 7.

36. The foregoing is not exhaustive of the functional and technical aspects of Whoop wearables or the claims of the '868 patent and, upon information and belief, information learned in discovery shall show infringement of one or more claims of the '868 patent by additional models of Whoop wearables.

37. Whoop's acts and omissions described above are without authority or license from Cheetah Omni.

38. Cheetah Omni has been and will continue to be damaged by Whoop's infringement in an amount to be determined at trial.

39. Cheetah Omni has suffered irreparable harm due to Whoop's infringement and will continue to suffer irreparable harm unless and until Whoop is enjoined by this Court.

## **Prayer for Relief**

WHEREFORE, Cheetah Omni prays for judgment against Whoop as follows:

A. A finding that Whoop has directly infringement one or more claims of the '868 patent under 35 U.S.C. § 271(a);

B. A finding that Whoop has indirectly infringed one or more claims of the '868 patent under 35 U.S.C. § 271(b) or (c);

C. Injunctive relief enjoining Whoop and its officers, directors, managers, employees, affiliates, agents, representatives, parents, subsidiaries, successors, assigns, those in privity with them, and all others aiding, abetting, or acting in concert or active participation therewith, from making, using, selling, offering to sell, or importing in the U.S. any product or system covered by any of the claims of the '868 patent or otherwise directly or indirectly infringing the '868 patent;

D. Compensatory damages under 35 U.S.C. § 284 in an amount proven at trial;

E. A finding that Whoop's infringement is and/or was willful and exceptional and an award of attorneys' fees and litigation-related expenses under 35 U.S.C. § 285 and the Court's inherent authority;

F. Pre-judgment and post-judgment interest;

G. Costs of the action; and

H. Such other and further relief as allowed at law or in equity that the Court deems to be appropriate.

/s/*Spencer F. Smith*
Jamil N. Alibhai
Texas State Bar No. 00793248
jalibhai@munsch.com
Winston O. Huff
Texas State Bar No. 24068745
whuff@munsch.com
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

and

Michael J. LaBrie, OBA #16253
Spencer F. Smith, OBA #20430
Zachary A.P. Oubre, OBA #30666
McAfee & Taft A Professional Corporation
Eighth Floor, Two Leadership Square
211 N. Robinson
Oklahoma City, OK 73102
(405) 235-9621
(405) 235-0439 (fax)
mike.labrie@mcafeetaft.com
spencer.smith@mcafeetaft.com
zach.oubre@mcafeetaft.com

*Attorneys for Cheetah Omni, LLC*